An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-767

Filed 5 August 2026

Rowan County, No. 22CR051624-790

STATE OF NORTH CAROLINA

v.

FREDY REYES ALBERTO

Appeal by defendant from judgment entered 21 November 2024 by Judge Matthew B. Smith in Rowan County Superior Court. Heard in the Court of Appeals 20 May 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Brenée W. Orozco, for the State.*
>
> *John T. Stanford for Defendant.*

WOOD, Judge.

Fredy Reyes Alberto ("Defendant") appeals from a judgment entered following a jury verdict finding him guilty of taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. On appeal, Defendant contends (1) the trial court erred by admitting testimony from Julia's mother, (2) Defendant received ineffective assistance of counsel when his attorney failed to move to strike the testimony from

Julia's mother, and (3) the trial court erred by not instructing on Defendant's purported admission to her. After careful review of the record, we conclude Defendant received a fair trial free from error.

## I. Factual and Procedural Background

In March 2022, Defendant was at the home of family friends, J.H.'s ("Julia[1]") parents, doing repairs to a door when fifteen-year-old Julia returned home from school. According to Julia, she went straight to her bedroom when she arrived home. Defendant followed her into her room and sat beside her on the bed attempting conversation. He left her room after a brief interaction, and she went out to the kitchen where she felt more comfortable. A short time later Defendant walked through the kitchen to use the bathroom. After using the bathroom, Defendant came back into the kitchen, coming up from behind Julia, and wrapped his arms around her. She could feel "his penis in [her] back" and he put his hands inside her shirt and grabbed her breasts. Julia was very upset and called her mother to report what had happened.

On 8 August 2022, Defendant was indicted for indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1.

On 18 November 2024, the issue came on for trial. In addition to testimony from Julia, the jury heard testimony from Julia's mother, who testified that she had

---

[1] Pseudonyms are used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

confronted Defendant shortly after his interaction with Julia. Julia's mother testified:

> A. . . . It was around three in the afternoon when we received that call from my daughter. She was shaking and crying. The only thing I could understand her saying was "Fredy touched me."
>
> Q. What was going through your mind during that phone call?
>
> A. Helplessness, impotence.
>
> Q. What did you do?
>
> A. At that moment I couldn't say anything to my husband because he had just woken up. He was in a diabetic coma. . . . I waited until I got home.
>
> Q. What did you do when you got home?
>
> A. I came inside. My husband stayed outside with him and my husband wasn't aware of what had happened. I went inside and told my daughter to explain to me. I couldn't understand everything that she was telling me until I told her to have me sit where she had been sitting and to do to me what he had done to her.
>
> . . . .
>
> Q. And then when she demonstrated to you what was done, what did she do?
>
> A. I told her that we were going to confront him together, but she couldn't and I understood where she was coming from. And I decided to confront him alone.
>
> . . . .

Q. So where . . . did you confront him? . . . .

A. I called him and it was in the first living room.

Q. Where was your husband when you were talking to him in the living room?

. . . .

A. I remember he came in and touched my shoulder and asked me if I was fine. Afterwards I asked him what had happened with my daughter, and he told me, Nothing. I asked him the question again, and he told me that he had just given her a massage. And I responded, No, Fredy, you didn't give my daughter a massage. You touched her. And he asked me to forgive him, that it just -- it just kind of happened, and to not tell my husband or his wife Maria.

Q. What did you say in response?

A. At that moment I said, You don't do that. And he told me that, Yes, that he wouldn't do it again.

Later in Mother's testimony, she also referenced "other cases" involving Defendant, resulting in two sustained objections from Defendant's trial counsel:

Q. Did your family and his family find out about it later?

A. That's right.

Q. How so?

A. Because I heard about other cases where he --

[DEFENDANT'S COUNSEL]: Objection.

THE COURT: Sustained.

Q. Did you tell his wife at any point?

A. That's right.

. . . .

A. [] My husband, he was sick, and [Defendant's romantic partner]'s son had cancer. And all of that, you know, made me talk, and because I knew about other cases.

[DEFENDANT'S COUNSEL]: Objection to that part of the answer.

THE COURT: Sustained.

Q. Ma'am, why didn't you just call the police?

A. I didn't do it because of my husband and her son.

Defendant made no further objections during either of these exchanges.

During closing arguments, the State referred to Defendant's request for forgiveness from the Julia's mother as an "admission":

> What does mother testify to? She comes home, she confronts the defendant and at first he denies. But then he says, "I was giving her a massage." That alone is questionable, maybe not criminal. But then he goes farther and says to forgive him, it just happened. Do not tell your husband or my wife. Is that an admission? That's for you to decide, but it certainly seems at least that he acknowledges some culpability of wrongdoing if he does not want her to tell her husband. I don't think anybody would want the father of a 15-year-old girl knowing that you touched her breasts. And he did not want his wife to know.

Defendant did not object or raise any issue to the trial court during this portion of the State's closing argument.

On 20 November 2024, the jury found Defendant guilty of indecent liberties with a child. Defendant entered oral notice of appeal in open court.

## II. <u>Analysis</u>

On appeal, Defendant argues (1) the trial court erred by admitting testimony from Julia's mother, (2) alternatively Defendant received ineffective assistance of counsel when his attorney failed to move to strike the testimony regarding "other cases" for which the trial court had already sustained an objection, and (3) the trial court erred by not instructing on Defendant's purported admission to her. We disagree.

### A. Mother's Testimony

Defendant argues the trial court plainly erred by allowing the jury to consider Mother's testimony concerning "other cases." However, the transcript reveals the trial court sustained Defendant's objections. Furthermore, the trial court gave the following instruction to the jury at the beginning of the trial: "[w]hen the [c]ourt sustains an objection to a question, the jurors must disregard the question and the answer, if any has been given, and draw no inference from the question or answer or speculate as to what the witness would have said if permitted to answer."

Defendant contends that the statement, "[w]hen the [c]ourt sustains an objection to a question," made the instruction unclear; however, we do not perceive any realistic possibility that the jury would have misunderstood the importance of this instruction as it pertains to a sustained objection to an answer. The trial court

instructed the jury to disregard testimony for which an objection had been sustained, and the trial court sustained objections to all of the testimony concerning "other cases." It is well established that "[j]urors are presumed to follow a trial court's instructions[,]"and Defendant offers no evidence to support his contention that the jury did not follow the trial court's instruction. *State v. Morgan*, 164 N.C. App. 298, 302, 595 S.E.2d 804, 808 (2004) (quoting *State v. McCarver*, 341 N.C. 364, 384, 462 S.E.2d 25, 36 (1995)). Defendant has failed to demonstrate the requisite prejudice to succeed on either argument. As the trial court did not allow the jury to consider Mother's testimony, the trial court did not err.

Alternatively, Defendant contends he received ineffective assistance of counsel regarding Mother's testimony. Specifically, Defendant contends despite his trial counsel successfully objecting to the testimony of Julia's mother regarding "other cases" at trial, his trial counsel also should have independently moved to strike the same.

"When challenging a conviction on the basis that counsel was ineffective, a defendant must show that counsel's conduct 'fell below an objective standard of reasonableness.'" *State v. Todd*, 369 N.C. 707, 710, 799 S.E.2d 834, 837 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). The United States Supreme Court has set forth the following test for determining whether a defendant received ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L.Ed.2d at 693. Additionally, the Supreme Court has emphasized that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

Here, the trial court provided a clear limiting instruction concerning objections and sustained all objections to the challenged testimony, presumptively resulting in the jury not considering the contested testimony. *See Morgan*, 164 N.C. App. at 302, 595 S.E.2d at 808. Had Defendant's trial attorney made the motion to strike, it would have had no effect on the jury's consideration and any failure to make such a motion could not have prejudiced Defendant. Therefore, this argument also fails.

## B. Plain Error in Jury Instruction

Defendant next argues the trial court plainly erred in failing to instruct the jury using pattern jury instructions for admissions. Defendant cites to the State's closing arguments:

> But then he goes farther and says to forgive him, it just happened. Do not tell your husband or my wife. Is that an admission? That's for you to decide, but it certainly seems

> at least that he acknowledges some culpability of
> wrongdoing if he does not want her to tell her husband

Defendant argues the absence of an instruction concerning admissions was sufficiently prejudicial to constitute plain error.

To prevail on plain error a defendant must demonstrate the existence of three factors:

> First, the defendant must show that a fundamental error
> occurred at trial. Second, the defendant must show that
> the error had a probable impact on the outcome, meaning
> that absent the error, the jury probably would have
> returned a different verdict. Finally, the defendant must
> show that the error is an exceptional case that warrants
> plain error review, typically by showing that the error
> seriously affects the fairness, integrity or public reputation
> of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up).

Here, Defendant cannot demonstrate prejudice regardless of the other factors necessary to establish plain error. The pattern jury instruction regarding admissions—the absence of which Defendant contends constitutes plain error—reads as follows:

> If you find from the evidence that the defendant has
> admitted a fact relating to the crime charged in this case,
> then you should consider all of the circumstances under
> which it was made in determining whether it was a
> truthful admission and the weight you will give to it.

N.C.P.I. – Crim. 104.60 (2025). Defendant contends that absent the pattern jury instruction on admissions, the jury would not have known to evaluate the statement

in context.  We disagree.

While an instruction may have been a useful reminder to the jury to thoughtfully execute its basic fact-finding role, there is no evidence the jury failed to consider all the circumstances and weigh the testimony.  In fact, the trial court properly instructed the jury that they were "the sole judges of the believability of a witness" and "the weight to be given any evidence."  Defendant simply has not met the "heavy burden of convincing the Court that, absent the error, the jury probably would have returned a different verdict."  *State v. Barnett*, 141 N.C. App. 378, 387, 540 S.E.2d 423, 429 (2000), *aff'd*, 354 N.C. 350, 554 S.E.2d 644 (2001) (cleaned up).  The omission of an instruction on admissions, even if erroneous, had no probable prejudicial impact on Defendant's conviction.  *Reber*, 386 N.C. at 158, 900 S.E.2d at 786.

## IV. <u>Conclusion</u>

For the foregoing reasons, we conclude the trial court did not "allow" the jury to consider Mother's testimony concerning "other cases."  Additionally, we conclude that even if counsel's performance were found to be deficient for failure to move to strike the mother's limited testimony, no reasonable probability exists that the jury would have returned a different result.  Defendant has not shown the prejudice necessary to establish either ineffective assistance of counsel or plain error in the jury instructions.  Therefore, we hold the trial court did not err.  Defendant received a fair trial free from error.

NO ERROR.

Judges COLLINS and FLOOD concur.

Report per Rule 30(e).